JANE B. STRANCH, Circuit Judge,
concurring.
I concur with the holding of the court that Plaintiffs lack standing to challenge the Hate Crimes Act because they have not alleged that they intend to violate it or that there is an objectively reasonable threat of enforcement. I write separately to address Plaintiffs’ attempts to support their claim that the Act unconstitutionally chills their speech based on two sources: legislative history and statements by federal prosecutors. I begin with the caveat that I find resort to these sources unnecessary: the statute itself and its Rules of Construction are clear. However, because much ink and many words have been spilled on these arguments, explanation of why they are plainly without merit is called for.
I. Legislative history
In order to help meet their standing burden, Plaintiffs attempt to use legislative history to demonstrate that the Hate Crimes Act was “aimed directly” at them. See Virginia v. Am. Booksellers Ass’n, Inc., 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). Analysis of the legislative history leads to the opposite conclusion.
First, Plaintiffs quote without citation Rep. Sheila Jackson Lee: “We also need to protect those potential victims who may be the recipients of hateful words or hateful acts, or even violent acts.” Despite Plaintiffs’ failure to note an alteration in the text, this quotation actually begins mid-sentence in a discussion focused on the narrow issue of whether to use the word “gender” or “sex” in the bill. Markup Before the H. Comm, on the Judiciary, 111 Cong. (2009) (statements of Rep. Sheila Jackson Lee), 2009 WL 1102023, at *7.[1] *425 In context, the quoted language is not significant to the issue in this case because the Congresswoman was discussing who would be protected rather than from what they should receive protection. Plaintiffs' further distort this quotation in the following explanatory parenthetical in their reply brief: “(claiming that the Act “protects] those potential victims who may be the recipients of hateful words).” (Alteration in brief). Even taken out of its situational context, the omitted use of the words “need to” before this language make clear that any such protection was merely aspirational for the speaker rather than a statement of what the Act actually does.[2]
Second, also without citation, Plaintiffs assert that an unnamed “congressional supporter” of the Act responded in the negative to the following question: “[I]f a minister preaches that sexual relations outside of marriage of a man and woman is wrong, and somebody within that congregation goes out and does an act of violence, and that person says that that minister counseled or induced him through the sermon to commit that act, are you saying under your amendment that in no way could that ever be introduced against the minister?” However, this purported legislative history occurred in 2007 regarding an amendment to an earlier version of the legislation.[3] Markup of H.R. 1592, The “Local Law Enforcement Hate Crimes Prevention Act of 2007: Hearing Before the H. Comm, on the Judiciary, 110 Cong. 206 (2007) (statements of Reps. Louie Gohmert and Artur Davis). Moreover, the surrounding passages reveal that this discussion related to an evidentiary issue, not the scope of conduct proscribed by the bill.
A more thorough review of the legislative history reveals that Congress did, in fact, have individuals such as Plaintiffs in mind when it passed the Hate Crimes Act. And it intended to protect their constitutional expression of religious beliefs. See H.R.Rep. No. 111-86, at 16 (2009). Thus, I find no evidence in the legislative history arguments offered that the Act was “aimed directly” at religious leaders such as Plaintiffs.
II. Enforcement
Plaintiffs also argue that the “chilling effect” of the Hate Crimes Act stems from statements made by federal prosecutors and the Attorney General: “[T]he Attorney General and his loyal prosecutors in Michigan ... have publicly abandoned their neutrality and become themselves activists with an agenda” to prosecute or otherwise oppress Plaintiffs. In support of this bold accusation, Plaintiffs cite statements by two Assistant United States At *426 torneys noting that their office is “eager to bring cases under this [A]ct” and “open for business in enforcing and defending the Hate Crimes Prevention Act,”[4] as well as a quotation by Attorney General Eric Holder that the Act is “a great tool for the Justice Department” which will “improve the quality of life for ... gay and lesbian Americans.”
These statements provide no support for Plaintiffs’ arguments. Conspicuously absent from these allegations are any express (or even implied) threats of enforcement of the Hate Crimes Act against Plaintiffs or any other religious leaders for their proposed religious speech. In fact, the comments from these officials do not even mention religious leaders, let alone suggest enforcement as to them.
To the contrary, Attorney General Holder testified before the Senate that he believes the type of conduct intended by Plaintiffs is not proscribed by the Hate Crimes Act:
The minister who says negative things about homosexuality, about gay people, this is a person I would not agree with but is not somebody who would be under the ambit of this statute. The person who actually committed the physical act of violence would be the person — assuming that all the jurisdictional requirements were met, it is the person who commits the actual act of violence who would be the subject of this legislation, not the person who is simply expressing an opinion____[Wje’re looking at people who actually commit physical acts of violence ....
The Matthew Shepard Hate Crimes Act of 2009: Hearing Before the S. Comm, on the Judiciary, 111th Cong. IS (2009). Plaintiffs respond to this testimony by dismissing it as beyond the statute itself: “This court’s review of the Hate Crimes Act must focus on the language chosen by Congress and not the Attorney General’s improper interpretation and application of that language.” But substantial parts of Plaintiffs’ arguments — including this one— are based on statements of those charged with effectuation of the Act.
Further, it is undeniable that the position taken by the Attorney General, who is charged with enforcing this Act and is the defendant in this litigation, is germane. Sitting en banc in another pre-enforcement challenge with a “law-enforcement vacuum,” we gave weight to the government’s assertion that “it has no intention of enforcing the law in this setting — as proved by the fact that the Attorney General, a party to this case and the sole defendant in it, has taken the position that the statute does not apply to [the conduct in question].” Connection Distrih. Co. v. Holder, 557 F.3d 321, 339 (6th Cir.2009) (en banc) (quotation marks omitted). To the extent that we may consider the government’s own stated enforcement positions, it is also worth nothing that the United States Attorneys’ Manual contains a specific provision that federal prosecutors should not make “prosecution or declination decisions based solely upon a such person’s [sic] affiliation with any group advocating for or against rights of persons with the characteristic identified by statute” when enforcing the Hate Crimes Act. § 8-3.300 (2009).
Thus, I find wholly groundless Plaintiffs’ claim that statements made by federal prosecutors and the Attorney General constitute threats of enforcement of the Hate Crimes Act against religious leaders for their religious speech.
*427 The protection of religious speech is a bulwark built by our Constitution for the purpose of guarding a foundational right. But the safeguards provided by that bulwark include standards not only for laws that are enacted but also for those who seek to litigate the propriety of those laws. Both matter. Because Plaintiffs have neither alleged that they intend to violate the Hate Crimes Act nor offered sufficient evidence to objectively justify a reasonable fear of enforcement, I must conclude that they lack standing to bring this pre-enforcement challenge.

. Rep. Jackson Lee's full statement is as follows:
I think that the gentlelady has analyzed it [the distinction between “gender” and "sex"] very eloquently. But I would also add that the premise of this — underlying premise of the bill is to thwart discrimination or hateful acts. I think the utilization *425 of the term gender allows us to ensure that a definition is not narrow, but that it represents the elements that might be discriminated against or might have the unfortunate results of having hateful acts perpetrated against them on the basis of the term gender.
So I do think that if we are to adhere to your principles of modernizing, using a term that we are familiar with, we also need to protect those potential victims who may be the recipients of hateful words or hateful acts or even violent acts. And I think that the amendment would diminish the legislation and take it away from what it is supposed to be, which is to address the question of hate crimes in America.

Id.

. In my attempt to locate the source of this quotation, I observed that it appeared in various webpages and blogs similarly out of context and without citation. Briefs must adhere to a different standard. See United States v. Bridgewater, 479 F.3d 439, 443 (6th Cir.2007).

. Although similar, that version of the bill did not contain the "violent acts” provision or many of the specific First Amendment protections listed in the Hate Crimes Act. H.R. 1592, 110th Cong. (2007).

. These statements are contained in an article which was written after the complaint was filed and discusses this case.